UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELIZABETH DELOREAN,

      Plaintiff,

v.

COACH, INC.,

      Defendant.

Case No. 2:15-cv-13704

Honorable Matthew F. Leitman

Magistrate R. Steven Whalen

_____/

SALVATORE PRESCOTT PLLC
By: Sarah S. Prescott (P70510)
105 E. Main Street
Northville, MI 48167
(248) 679-8711
sprescott@salvatoreprescott.com


*Counsel for Plaintiff*

KIENBAUM OPPERWALL
 HARDY & PELTON, P.L.C.
By: Elizabeth P. Hardy (P37426)
    Thomas J. Davis (P78626)
280 N. Old Woodward Avenue
Suite 400
Birmingham, MI 48009
(248) 645-0000
ehardy@kohp.com
tdavis@kohp.com

*Counsel for Defendant*

_____/

**COACH'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................ i

CONCISE STATEMENT OF THE ISSUES PRESENTED ................................. ii

PRINCIPAL AUTHORITIES RELIED ON ........................................................ iii

INTRODUCTION .................................................................................5

ARGUMENT .......................................................................................6

I.   The Requests for Production that remain disputed are
     improper, overbroad, or irrelevant.................................................6

     A.   Coach cannot, and need not, provide advance notice of
          documents it might use to refresh or impeach (RFP 5).........................6

     B.   Plaintiff's request for documents to be used at trial or
          in depositions is premature and improper (RFP 8). .............................8

     C.   Plaintiff is not entitled to complete personnel files, let
          alone personnel files of non-comparators (RFPs 17,
          19, 28)...................................................................................9

     D.   Coach has provided relevant, responsive sales reports
          for six months *beyond* the closing of Plaintiff's former
          store, and should not be required to produce additional
          reports. (RFP 18) .................................................................16

     E.   Plaintiff's request for performance-related material
          and goals issued by non-decisionmaker Maida are
          irrelevant. (RFP 29, 30).........................................................17

II.  Coach remains committed to producing the agreed-upon
     documents, and will do so on a specified timeframe, mooting
     the remainder of her motion. ........................................................22

III. Plaintiff's request for attorney's fees is inappropriate. ..................23

CONCLUSION ...................................................................................24

## CONCISE STATEMENT OF THE ISSUES PRESENTED

1.     Should the Court deny Plaintiff Elizabeth DeLorean's Motion to Compel in light of Coach's specific, well-grounded objections to the improper and/or irrelevant nature of Plaintiff's discovery requests?

2.     Should the Court deny Plaintiff's perfunctory request for fees, unaccompanied by any citation to authority, because Coach's objections are substantially justified?

## PRINCIPAL AUTHORITIES RELIED ON

**Cases**

*Brandstetter v. Nat'l R.R. Passenger Corp.*,
 1987 WL 25422 (D.D.C. Nov. 19, 1987)...............................................................7

*Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*,
 244 F.R.D. 614 (D. Colo. 2007).............................................................................16

*Doe v. Lexington-Fayette Urban Cnty. Gov't*,
 407 F.3d 755 (6th Cir. 2005).................................................................................24

*Garg v. Macomb Cnty. Cmty. Health Servs.*,
 696 N.W.2d 646 (Mich. 2005) ...............................................................................18

*Hemphill v. ARAMARK Corp.*,
 2013 WL 1662963 (D. Md. Apr. 15, 2013) ..........................................................11

*Hunter v. Coca-Cola Co.*,
 2015 WL 3874945 (W.D. Wash. June 23, 2015).....................................................11

*Jackson v. City of Chicago*,
 552 F.3d 619 (7th Cir. 2009).................................................................................19

*Knoll v. Am. Tel. & Tel. Co.*,
 176 F.3d 359 (6th Cir. 1999).................................................................................10

*McBride v. Medicalodges, Inc.*,
 2008 WL 1958350 (D. Kan. May 2, 2008) ............................................................7

*Nakagawa v. Regents of Univ. of Cal.*,
 2008 WL 1808902, (N.D. Cal. Apr. 22, 2008) ....................................................10

*Regan-Touhy v. Walgreen Co.*,
 526 F.3d 641 (10th Cir. 2008).......................................................................... 11, 12

*Richter v. Hook-SupeRx, Inc.*,
 142 F.3d 1024 (7th Cir. 1998)...............................................................................13

*Searcy v. Cty. of Oakland*,
 735 F. Supp. 2d 759 (E.D. Mich. 2010).................................................................18

*Seeger v. Cincinnati Bell Tel. Co.*,
    681 F.3d 274 (6th Cir. 2012) ...............................................................22

*Shah v. James P. Purcell Assocs., Inc.*,
    2006 WL 988245 (D. Conn. Apr. 12, 2006) ......................................10

*Sporck v. Peil*,
    759 F.2d 312 (3d Cir. 1985) .............................................................7, 8

*Waters v. U.S. Capitol Police Bd.*,
    216 F.R.D. 153 (D.D.C. 2003) ...........................................................11

*Weigel v. Baptist Hospital*,
    302 F.3d 367 (6th Cir. 2002) ..............................................................20

**Rules**

Fed. R. Civ. P. 26(a)(1)(A)(ii) .................................................................8

Fed. R. Civ. P. 26(a)(3)(B) ......................................................................9

Fed. R. Civ. P. 37(a)(5)(A)(ii) ...............................................................23

Fed. R. Evid. 612(b).................................................................................7

## INTRODUCTION

Within days of Plaintiff's termination by Coach for poor performance in early June 2013, she contacted her current counsel and—apparently on counsel's advice—did not file her lawsuit at that time.[1] *See* Ex. A, Pl's Dep., at 313-16 (refusing to explain delay, citing "privilege"). Instead, she waited nearly three years to bring this lawsuit—during which time her Sterling Heights store closed down (in January 2014); potential witnesses left the Company; and documents were, *inter alia*, sent off-site, or destroyed in accordance with the Company's retention policies. Plaintiff then served voluminous and overbroad document requests that, to date, have resulted in the production of more than 6,000 pages.

Still, Plaintiff wants more. Coach has made good-faith compromises to resolve issues without Court intervention. It agreed to provide additional documents, despite its valid objections, but told Plaintiff that obtaining the

---

[1]In fact, Plaintiff's 2013 text messages—recently produced by her close friend and witness Nicholas Lippa—suggest what really occurred. In those texts, Plaintiff told Lippa that "the more time passes, the more stupid I feel for blaming my obesity for my termination," and admitted that "[m]y store had been sucking pretty bad." Ex. B. She also said that she had "talked to a lawyer" but was "skeptical," and wanted to "hear either 'no, you have a case' or 'yes, let it go.'" *Id.* Plaintiff thus believed, in 2013, that she had a marginal case. In turn, that demonstrates that Plaintiff's explosive claim set forth in her complaint—that her boss *directly told her* that her obesity was a factor in her termination (*see, e.g.*, Dkt. 17, Pg ID 179)—is a recent concoction. No rational person would "feel stupid . . . for blaming [her] obesity for [her] termination" if she had *actually* been told that—thus effectively confirming that her supervisor made no such comment.

materials could be difficult and time-consuming, in large part due to the effects of her delay. During a phone conversation, counsel indicated that Plaintiff should go ahead and file her motion to compel on *areas of disagreement*, so the Court could resolve those issues while affording Coach time to complete its efforts to secure additional documents—and in fact, Coach told Plaintiff that it would agree to an extension of discovery to accommodate her.

Thus, despite how Plaintiff characterized that conversation, Coach has always intended to fulfill its agreement. Indeed, it has reached further agreement in principle with Plaintiff's counsel as described *infra* at Part II. As the agreed-upon discovery will be produced before the Court is likely to hold a hearing on the motion to compel (let alone rule on it), that portion of Plaintiff's motion related to agreed-upon discovery items will be moot. But on the limited areas in which the parties are deadlocked, the motion to compel should be denied in full.

## ARGUMENT

### I. The Requests for Production that remain disputed are improper, overbroad, or irrelevant.

#### A. Coach cannot, and need not, provide advance notice of documents it might use to refresh or impeach (RFP 5).

The first disputed RFP is No. 5, which reads as follows: "Provide every item and/or *document you* may use to refresh and/or impeach in this matter." This request is improper for several reasons. As a practical matter, it is premature. Indeed, "[u]ntil a witness has testified at trial, a party may not know what

documents may be useful for impeachment." *McBride v. Medicalodges, Inc.*, 2008 WL 1958350, at *7 (D. Kan. May 2, 2008). Thus, "[t]o require a party to sort through the content of documents and make judgments at this point about dishonesty or untruthfulness as to matters that may have no relevancy calls for speculation and creates an undue burden." *Id.* The same rationale holds for documents used to refresh; indeed, the impossibility of advance notification for such documents is embodied in Federal Rule of Evidence 612(b), which provides that a writing used to impeach must be "produced at the hearing" where it is used.

Plaintiff's demand that Coach specifically identify documents that it believes might be useful for impeachment also improperly seeks to invade counsel's mental impressions and legal strategy. *See Brandstetter v. Nat'l R.R. Passenger Corp.*, 1987 WL 25422, at *2 (D.D.C. Nov. 19, 1987) ("impeachment materials need not be "red-flagged" by the producing party"); *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985) ("the selection and compilation of documents by counsel . . . in preparation for pretrial discovery falls within the highly-protected category of opinion work product."). Coach has *not* withheld documents subject to a valid RFP on grounds that the documents also have impeachment value. Thus, what Plaintiff wants is for Coach's lawyers to identify which already-produced documents they think are best suited to discrediting her or her witnesses. While she may be entitled

to certain documents, she has no right to counsel's strategic plans for using those documents.

Plaintiff's suggestion that her request is no different than the parties' initial disclosure obligations, Dkt. 17 at Pg ID 197, is wrong. That rule requires Coach to provide "a copy—or a description by category and location" of documents it may use to support its defenses, but it *expressly* carves out from the disclosure obligation information used "solely for impeachment." *See* Fed. R. Civ. P. 26(a)(1)(A)(ii). Coach has met that obligation, and it will supplement if it believes that it might use other documents, not in the identified categories, to support its defenses. But Plaintiff wants far more than that—she wants to know the documents Coach might use *to impeach*—and that requires Coach to lay out its defense plan to opposing counsel. That is improper, and Coach's objection should be sustained.

### B.   Plaintiff's request for documents to be used at trial or in depositions is premature and improper (RFP 8).

For similar reasons, Coach objects to Plaintiff's RFP 8, which asks it to "[p]roduce a copy of all <u>documents</u> <u>you</u> may introduce at trial or in depositions in this case." Dkt. 17-3, Pg ID 216. As with RFP 5, Coach is not withholding otherwise-responsive documents because it might use them at deposition or trial. Rather, Plaintiff again seeks to have Coach red-flag the specific documents it will use in upcoming depositions. That is improper. *See Sporck*, 759 F.2d at 316. It is also premature to ask Coach, at this early stage, to identify its trial documents from

among its productions. It will do so in the final pretrial disclosures, the normal time at which a party must make those decisions. *See* Fed. R. Civ. P. 26(a)(3)(B). Coach's objection to this request should be sustained.

### C.    Plaintiff is not entitled to complete personnel files, let alone personnel files of non-comparators (RFPs 17, 19, 28).

Plaintiff's Requests for Production 17, 19, and 28 seek the complete personnel files of three categories of employees: (i) "each and every person involved in any way whatsoever with Plaintiff's termination" (RFP 17); (ii) "the person(s) who replaced Plaintiff" (RFP 19); and (iii) the files of supervisor Jennifer Thompson and Plaintiff's subordinate assistant managers from the Sterling Heights store.[2] (RFP 28). Plaintiff's requests for the production of full personnel files for these employees is intrusive, overbroad, and improper.

---

[2] In recent correspondence, counsel makes a newfound claim that RFP 28 actually covers all personnel files of *all* managers. *See* Ex. C. That is simply not so. RFP 28 reads as follows:

> Provide personnel files of Alicia Potteray, Andrea Trombley, Heather Kelto, Jennifer Thompson, Lars Stinson, Lauren Budesky, Maria Doty and any other management.

Dkt. 17-3, Pg ID 227. The identified people in this list are (1) Thompson, who supervised Plaintiff, and (2) assistant managers that Plaintiff supervised at the Sterling Heights store. The natural reading of the general reference to "any other management" is, by implication, likewise limited to managers in the supervisory chain at the Sterling Heights store. *Cf. Allinder v. Inter-City Prods. Corp. (USA)*, 152 F.3d 544, 549 (6th Cir. 1998) ("According to the rule of *ejusdem generis*, when general words follow the enumeration of specific words in a statute, courts

The Sixth Circuit has held that it "is clear" that employers have "a valid interest in the privacy of nonparty personnel files." *Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 365 (6th Cir. 1999). Thus, even where such files might contain relevant comparator evidence, the Sixth Circuit has approved limitations on access to personnel files to attorney's eyes only, and even mere "inspection by plaintiff's counsel in the office of counsel to the defendants." *Id.* It thus follows that, for people who are not even arguably Plaintiff's comparators, the disclosure of full personnel files should be denied altogether. *See, e.g.*, *Nakagawa v. Regents of Univ. of Cal.*, 2008 WL 1808902, at *3 & n.2 (N.D. Cal. Apr. 22, 2008) (denying request for complete personnel files of comparators, and imposing even more restrictions on material from personnel files of subordinates); *Shah v. James P. Purcell Assocs., Inc.*, 2006 WL 988245, at *3 (D. Conn. Apr. 12, 2006) (holding, in wrongful termination case of division head, that personnel files of people in "positions below the division head level . . . are not similarly situated to the Plaintiff and the information in their personnel files is therefore irrelevant.")

Moreover, even when a party suggests that personnel files *do* contain relevant evidence, courts often require narrowly-tailored requests that seek not

---

are to construe the general words in a manner that limits them to the same class of things enumerated by the preceding specific words.") Plaintiff herself describes the RFP this way in her motion. Dkt. 17, Pg ID 195. And if RFP 28 covered *all* personnel files of *all* store managers, then other RFPs (like RFP 19) would be superfluous. Plaintiff has not requested peer manager personnel files in an RFP.

complete files, but only the relevant documents potentially contained therein. Thus, in *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 648 (10th Cir. 2008), the court affirmed the denial of a motion to compel complete personnel files because "personnel files often contain sensitive personal information . . . and it is not unreasonable to be cautious about ordering their entire contents disclosed willy-nilly." The Court suggested that a different result would have been likely if the plaintiff had made a "narrowly targeted request" for relevant documents that might be in the personnel files. *Id.*; *see also, e.g.*, *Waters v. U.S. Capitol Police Bd.*, 216 F.R.D. 153, 164 (D.D.C. 2003) (requiring only production of relevant information from personnel files); *Hunter v. Coca-Cola Co.*, 2015 WL 3874945, at *4 (W.D. Wash. June 23, 2015) (party "not entitled to review an employee's entire personnel file . . . where narrower disclosures will suffice."); *Hemphill v. ARAMARK Corp.*, 2013 WL 1662963, at *3 (D. Md. Apr. 15, 2013) (denying motion to compel full personnel files where "plaintiff has not sought to tailor his request to include only relevant documents within the files.") These authorities warrant denial of the requests for full personnel files here.

**1. Persons involved in termination.** *First*, Plaintiff seeks in RFP 17 the files of "each and every person involved in any way whatsoever with Plaintiff's termination." Coach has provided the names of anyone with involvement, no matter how minor, in an interrogatory response. Dkt 17-3, Pg ID 229-230. Only

three of those people were in Plaintiff's direct supervisory chain (Thompson, Caldwell-Troutman, and Shoemaker); the rest were officials at Coach's New York corporate headquarters, including counsel who merely gave privileged legal advice. Plaintiff offers no justification for needing the complete personnel files of *any* of these people.

Plaintiff first speculates that the personnel files might contain "complaints" or "coaching on discrimination." Dkt. 17, Pg ID 195. If so, a narrowly-tailored request seeking complaints or coaching about weight discrimination might be appropriate. *See, e.g.*, *Regan-Touhy*, 526 F.3d at 648. Indeed, that is all Plaintiff sought for peer managers that she might argue are comparators (*see* RFP 29); if narrowly-tailored requests for specific documents are sufficient for comparators, there is no basis for Plaintiff to demand *full* files of non-comparators.[3]

Plaintiff's only other stated basis for seeking the complete personnel files of people involved in the termination is her speculation that because Michigan is the only state that includes weight as a protected employment class, Coach does not have specific training for weight discrimination. Dkt. 17, Pg ID 195-96. She posits

---

[3] Moreover, while narrowly-tailored requests might be appropriate as to Plaintiff's Michigan supervisors (Thompson, Shoemaker, and Caldwell), there is no conceivable basis for seeking *any* records from personnel files of corporate employees in New York. Plaintiff does not allege any acts of intentional discrimination by New York employees with respect to her termination. And Coach has produced correspondence between Michigan supervisors and New York regarding Plaintiff's termination—none of which references Plaintiff's weight.

that the "only" way she can prove this is by showing that the full personnel files contain an "absence" of records showing weight discrimination training. *Id*. To be blunt, that is ridiculous. Plaintiff could quite simply serve an interrogatory or document request tailored to that topic. And in any event, the absence of records in a personnel file would prove nothing—there is no reason to expect that training records would be in a personnel file, particularly when it is not Coach's practice to keep them there. This is a spurious argument, suggesting that the real intent here is a fishing expedition.

**2. Plaintiff's "replacement."** Plaintiff next seeks the personnel file of the person who became Sterling Heights store manager after Plaintiff's termination.[4] (RFP 19.) Again, the request for a full personnel file is not justified.

Plaintiff first suggests some right to learn of the "qualifications" of Ms. Broessel. But both cases she cites for this proposition (*White* and *Watts*, *see* Pg ID 194 n.1, 195) are failure-to-promote cases, where "relative qualifications" may be relevant to why one person was promoted over the other. This is a case alleging that Plaintiff was terminated. The qualifications of a subsequently-hired manager, and not one hired in head-to-head competition with a plaintiff, is not relevant to the issue of plaintiff's termination. *See Richter v. Hook-SupeRx, Inc.*, 142 F.3d 1024, 1030 (7th Cir. 1998) (rejecting "comparisons of [terminated plaintiff's]

---

[4] Plaintiff does not identify this person, but her name is Cathrine Broessel.

qualifications with those of his successor" for purposes of establishing the reason for termination). Even if Ms. Broessel's qualifications *were* relevant, at best that supports a request for her resume or other materials she provided in connection with the hire—not her full file.

Plaintiff's other asserted grounds for seeking Ms. Broessel's personnel file are unsound. She claims the file might show "more achievable goals," "the lack of a write up or criticism," or the Sterling Heights store's relative performance during Ms. Broessel's time there. Dkt. 17, Pg ID 194. But those records, to the extent they exist, have been (or will soon be) provided under Plaintiff's tailored requests for Sterling Heights performance documents, discipline-related documents, and goal-related documents. *See infra* at Part II (discussing RFP 18, 29, and 30.) The request for a full personnel file is, again, unnecessary and overbroad.

**3. Plaintiff's associate managers.** Plaintiff's request for the full personnel files of several of her subordinates—various associate managers who reported to her (RFP 28)—is particularly unjustifiable. She claims a need for these files because these individuals "worked in the same store as Plaintiff" and how "the company rated their performance relative to Plaintiff is *highly probative*."[5] Dkt. 17, Pg ID 195. Assuming, for now, that such performance documents of

---

[5] Plaintiff fails to mention that *she herself*—not Thompson or Maida—was responsible for managing these individuals' performance, and she herself evaluated her subordinates and gave them performance reviews.

assistant managers would be relevant, Plaintiff could simply request those performance documents directly; after all, she requested such tailored information from peer managers in RFP 29 and 30. There is no basis for demanding the full files of associate managers.

*    *    *

Ultimately, Plaintiff's requests for full personnel files are improper. Plaintiff has made targeted requests for other material—including comparator information for peer managers—and Coach has agreed to provide that. To the extent she believes that any non-comparator's records would be relevant, she can seek that evidence through a narrowly-tailored RFP directed at that material. Plaintiff would not be prejudiced by narrowly-tailored requests, and requiring such tailored requests would protect the privacy interests of people who did not ask to be involved in this suit.[6]

---

[6] Further, Plaintiff's testimony suggests personal animosity towards Andrea Trombley, whose complete personnel file she seeks. *See, e.g.*, Ex. A, Pl's Dep. 445, 490-91. And Plaintiff's deposition questions also suggest a plan to launch personal attacks on supervisor Jennifer Thompson based on Thompson's appearance, her dating habits, lifestyle, and other irrelevant topics. *E.g.*, Ex. D, Lippa Dep. at 192-93; Ex. E, Massaria Dep. at 118-22, 125, 128-29.

There is cause to be wary of a possible improper motive for Plaintiff's selection of requests for complete personnel files. Thus, even if the Court agreed that entire personnel files must be disclosed, it should be an attorney's eyes only inspection in the office of Coach's counsel. *See Knoll*, 176 F.3d at 365 (citing with approval to such a limitation).

-15-

**D.     Coach has provided relevant, responsive sales reports for six months *beyond* the closing of Plaintiff's former store, and should not be required to produce additional reports. (RFP 18)**

Plaintiff next moves to compel on RFP 18—which, as narrowed from her previously overbroad request, *see* Dkt. 17, Pg ID 186—relates to monthly sales reports for "2012-present." On this topic, Coach told Plaintiff that these reports are not archived after being generated and sent, and the only possible source for the reports would be if a manager kept the years-old report in his or her mailbox. Dkt. 17-7, Pg ID 278-79. Despite that, Coach *was* able to locate monthly reports for all but three calendar months from January 2012 to June 2014. *Id.* Coach has exhaustively searched potential sources for the remaining three documents (March, October, and November of 2013). It cannot locate them, and it is not required to "recreate . . . monthly reports that do not otherwise exist." *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 633 (D. Colo. 2007). That said, in an effort to partially resolve the parties' disputes, Coach *has* recreated the data and generated reports for the missing three months and will produce them.

Plaintiff's other demand—for records beyond June 2014—is unjustifiable. Her ostensible reason for seeking these files is to second-guess the business decision of Coach to close the Sterling Heights store, and to show that this store performed poorly after her termination. Dkt. 17, Pg ID 186. But the Sterling Heights store closed at the end of *January 2014*—a fact that is readily discernible

-16-

from the already-produced reports.[7] Plaintiff thus has information about store performance in her district for a *full year* after her termination—including for six months after her store closed. More recent sales data have no probative value.

### E.    Plaintiff's request for performance-related material and goals issued by non-decisionmaker Maida are irrelevant. (RFP 29, 30)

Finally, the last contested issue relates to the scope of potential comparator information under RFP 29 and RFP 30.[8] RFP 29 seeks "all disciplines/write ups, performance improvement plans, corrective action notices, assessments, coaching documents, and all other similar performance-related or disciplinary materials" for anyone employed as a store manager in Plaintiff's district since January 1, 2012 through the present—regardless of those documents' date. Dkt. 17-3, Pg ID 228. RFP 30 seeks "goals and documents relating to tracking goals" for the same managers. *Id.* at 229.

---

[7] The reports are subject to a protective order and so are not provided here; however, the parties can confirm that as of February 2014, no further daily, weekly, or monthly sales figures are reflected for the Sterling Heights store.

[8] Plaintiff has never identified the metrics on which she would consider someone a "comparator" for purposes of weight discrimination, and does not limit her request to information for people who were "similarly situated" but for their weight. Although Coach has nonetheless agreed to provide certain responsive records for Michigan store managers during the time that they reported to Thompson, Plaintiff's failure is an important one. There were several peer managers who were *also* overweight but who were not terminated, contrary to Plaintiff's "culture of discrimination" arguments. Providing documents from personnel files will do nothing to help Plaintiff determine the other store managers' weights or confirm whether at any point their weight fluctuated.

Coach objected to these requests as, among other things, overbroad. It has agreed to produce, however, responsive documents issued to store managers from July 2012 through June 2014—starting when Jennifer Thompson became their supervisor, and ending one year after Plaintiff's termination. Plaintiff demands more—seeking all such documents issued under Thompson's predecessor Andrea Maida, with the expressly-stated purpose of trying to show that Maida's criticisms of Plaintiff's performance arising prior to July 2012 are somehow false and discriminatory. Dkt. 17, Pg ID 191-92. That stated purpose is inappropriate.

Specifically, both of Plaintiff's claims in this case are subject to a three-year statute of limitations. *Garg v. Macomb Cnty. Cmty. Health Servs.*, 696 N.W.2d 646, 659 (Mich. 2005) (ELCRA); *Searcy v. Cty. of Oakland*, 735 F. Supp. 2d 759, 765 (E.D. Mich. 2010) (intentional infliction of emotional distress). As Michigan does not recognize the "continuing violation" doctrine, *Garg*, 696 N.W.2d at 659, any actionable adverse employment action that Plaintiff alleges was based on intentional discrimination must have occurred on or after October 20, 2012. *See* Dkt. 1. Maida's time as Plaintiff's supervisor falls outside of this time-frame, so the only possible use of Maida's alleged discriminatory acts to Plaintiff are as "background evidence" to support timely discrimination claims.

Background evidence, however, consists of time-barred but facially discriminatory acts and incidents. *See, e.g., Sanford v. Deloitte LLP*, No. 5:13-cv-

-18-

15167-JEL-DRG, Dkt. 33, p. 8 (attached as Ex. F) (compiling examples). It does *not* include discovery into material that, on its face, is not discriminatory, but at most could serve as a basis for a circumstantial inference of time-barred discrimination after a "mini-trial." The case of *Jackson v. City of Chicago*, 552 F.3d 619 (7th Cir. 2009) is instructive. There, the plaintiff's only timely claim was that the defendant denied him a job due to his race. He wanted to use an allegedly discriminatory denial of training—one that occurred outside the statute of limitations—to bolster that denial-of-hire claim. *Id.* at 622-23. The Seventh Circuit rejected this approach, holding that the evidence sought would not be relevant "background evidence" absent a "mini-trial" of the untimely claim—including comparing qualifications of Plaintiff and the selected trainees, and determining whether the skills the plaintiff would have gained in the prior training would have been relevant to the job at issue. *Id.*

Plaintiff's request for evaluations and information about Maida's treatment of other store managers—all of which occurred outside the statute of limitations—raises precisely the same issues. Those documents are only relevant to Plaintiff's case insofar as they can help show that *Jennifer Thompson*'s decision to seek Plaintiff's termination was due to Plaintiff's weight. And the way Plaintiff is seeking to do that is to assert that Plaintiff's poor performance reviews from her former supervisor Maida were also based on weight discrimination, through a

*McDonnell Douglas*-style comparator analysis of her Maida-era peers. She is not entitled to have mini-trials to determine whether Maida's performance reviews were, in fact, time-barred weight discrimination—a necessary predicate to using those reviews as "background evidence" of her timely weight claim. Indeed, even after a mini-trial, Maida's reviews would not be "background evidence" unless Plaintiff could somehow relate those reviews to Thompson's subsequent decision-making. *See, e.g.*, *Weigel v. Baptist Hospital*, 302 F.3d 367, 379 (6th Cir. 2002) (holding that time-barred claims of discrimination by past supervisors was not proper "background evidence"). Because the Maida-era comparator documents are not themselves "background evidence" of discrimination, but at best are fodder for Plaintiff's improperly seeking mini-trials over whether her old performance reviews were time-barred acts of discrimination, they are not discoverable here. *See Sanford*, Ex. F pp. 6-9 (rejecting similar effort to obtain comparator documents related to time-barred acts of alleged discrimination).

Plaintiff's argument that she is entitled to Maida-era store manager documents because Coach asked Plaintiff about her own reviews from Maida rests on a false equivalence. Dkt. 17, Pg ID 192. Coach's questions sought *direct* evidence refuting Plaintiff's allegations that her "work performance was at all times satisfactory or better," Dkt. 1, ¶ 10, and that her termination for "supposed poor performance" was pretextual. *Id.* ¶ 35. And, in fact, Plaintiff's testimony

confirmed that Maida had made Plaintiff aware of performance issues for years prior to her termination; that these issues were set forth in reviews; that she had ready access to the data cited in those reviews if she had a reason to question their veracity; but that did not raise any contemporaneous complaints. *See, e.g.*, Ex. A, Pl's Dep. at 399-402, 424-28, 452-54.

Thus, while Maida's reviews of Plaintiff are certainly probative evidence for Coach's defense, that does *not* open the door to Plaintiff holding mini-trials over the validity of Maida's reviews. Plaintiff makes no argument—and the record does not support—any notion that Plaintiff was terminated due to the performance issues identified in Maida's reports. Maida had no role in the termination (Dkt. 17-3, Pg ID 229-30), having transferred to an entirely different division in mid-2012. Jennifer Thompson put Plaintiff on a performance improvement plan in January 2013, and that plan cited only to performance issues that occurred while Thompson was Plaintiff's supervisor. Ex. G. Thompson sought to terminate Plaintiff after she failed to improve, and Coach's New York personnel reviewed and signed off on that decision. Ex. H.

There is no reason that mini-trials over the validity of Maida's reviews could establish that the reasons *Thompson* gave for terminating Plaintiff were false and

pretext for discrimination.[9] The Maida-era comparator documents are irrelevant, overbroad, and Coach's objections to producing them should be sustained.

## II.   Coach remains committed to producing the agreed-upon documents, and will do so on a specified timeframe, mooting the remainder of her motion.

Plaintiff's motion also seeks to compel certain documents that the parties had earlier agreed to, in compromise of the parties' dispute. As noted, Coach never backed off from that commitment, and the parties have reached agreement in principle on dates by which that production will be completed:

- **RFP 6**. Coach has already informed Plaintiff that it has no more "personal, medical, disciplinary, supervisory, administrative, and investigatory or other types of files" regarding Plaintiff. Dkt. 17-3, Pg ID 215 (discussing enumerated files); Dkt. 17-8 (noting that counsel already told Plaintiff of the absence of "other types of files.") Coach will provide the same answer in a formal supplemental response by Monday, April 25.

- **RFP 25**. Coach, again, has already told Plaintiff that it has completed the searches contemplated in the RFP response. *See* Dkt. 17-8, Pg ID 285-86 (acknowledging that "[w]e discussed this is completed." Coach will provide the same answer in a formal supplemental response by Monday, April 25.

---

[9] Even assuming Thompson's decision to put Plaintiff on a performance plan was influenced by Plaintiff's poor record, Thompson's reliance on old reviews would *not*, without more, show that *Thompson's* reasons for terminating Plaintiff were false and pretext for discrimination. After all, managers routinely rely on existing records, and a party cannot engineer a pretext argument by showing that documents honestly relied upon by a manager were erroneous or baseless. *Cf. Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285-86 (6th Cir. 2012) (honest reliance on documents, even if later shown to be "mistaken, foolish, trivial, or baseless," does not establish pretext).

- **RFP 18.** The re-created flash reports, *see supra* at 16, will be produced by Monday, April 25.

- **RFP 29:** The performance and disciplinary materials of Plaintiff's fellow store managers in southeast Michigan, issued during Thompson's time as supervisor through June 2014, *supra* at 17-18, will be produced by Monday, May 16. If Coach still has difficulty procuring certain documents by that date, it will provide an affidavit to the Court explaining the situation.

- **RFP 30.** The parties agreed to electronic-discovery search terms relative to this request. Those search terms returned over 10,000 mostly irrelevant documents and Plaintiff's counsel agreed that is overly broad. Plaintiff has agreed to work on additional search terms to reduce the overbreadth. Coach will provide responsive documents within two weeks of the parties' agreement to new, reasonable terms.

## III.   Plaintiff's request for attorney's fees is inappropriate.

Plaintiff's motion does not contain a request for fees, Dkt. 17, Pg ID 171-72, and her brief contains only a perfunctory reference to fees, without citing to any authority. *Id.* at 190, 193. She has waived her request. *See McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.")

In any event, and assuming Plaintiff's request relates to Rule 37(a)(5)(A), sanctions are inappropriate here. Coach's objections to the requests at issue are "substantially justified." Fed. R. Civ. P. 37(a)(5)(A)(ii). A motion is "substantially justified if it raises an issue about which there is a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action." *Doe v.*

*Lexington-Fayette Urban Cnty. Gov't*, 407 F.3d 755, 765 (6th Cir. 2005). This response sets forth the factual and legal arguments as to why Plaintiff's requests are objectionable, and those objections are substantially justified.

## CONCLUSION

Plaintiff's motion to compel should be denied.

Respectfully submitted,

KIENBAUM OPPERWALL
 HARDY & PELTON, P.L.C.

*s/Elizabeth P. Hardy*
By:   Elizabeth P. Hardy (P37426)
        Thomas J. Davis (P78626)
Attorneys for Defendants
280 N. Old Woodward Avenue
Suite 400
Birmingham, MI 48009
(248) 645-0000
ehardy@kohp.com
tdavis@kohp.com

Dated:  April 21, 2016

246163

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 21, 2016, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to counsel of record.

s/*Elizabeth P. Hardy*
Elizabeth P. Hardy
280 N. Old Woodward Avenue
Suite 400
Birmingham, MI  48009
(248) 645-0000
ehardy@kohp.com
(P37426)